United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES, in their capacities as TRUSTEES OF THE CEMENT MASONS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CA, CEMENT MASONS PENSION TRUST FUND FOR NORTHERN CA, CEMENT MASONS VACATION/HOLIDAY TRUST FUND FOR NORTHERN CA, CEMENT MASONS APPRENTICESHIP & TRAINING TRUST,<br><br>    Plaintiffs,<br><br>  v.<br><br>CORE CONCRETE CONSTRUCTION, INC.,<br><br>    Defendant. | Case No. 11-3259 SC<br><br>ORDER GRANTING APPLICATION <u>FOR DEFAULT JUDGMENT</u> |

## I. INTRODUCTION

Plaintiffs Board of Trustees ("Plaintiffs") in their capacities as Trustees of the Cement Masons Health and Welfare Trust Fund for Northern CA, Cement Masons Pension Trust Fund for Northern CA, Cement Masons Vacation/Holiday Trust Fund for Northern CA, Cement Masons Apprenticeship & Training Trust ("the Trust Funds") alleges that Defendant Core Concrete Construction, Inc. ("Defendant") failed to make timely fringe benefit contributions to the Trust Funds as required by the parties' collective bargaining agreements and trust agreements in violation of the Employee Retirement Income Security Act ("ERISA"). ECF No. 1 ("Compl.") at

3-5. Defendant has failed to answer Plaintiffs' Complaint or otherwise enter an appearance in this matter. Now Plaintiffs seek entry of Default Judgment against Defendant. ECF No. 13 ("App."). For the reasons set forth below, Plaintiffs' Application is GRANTED.

## II. BACKGROUND

Plaintiffs are the trustees of multi-employer employee benefit plans, as defined by the ERISA. Compl. ¶ II. Defendant is a member of the Construction Employers' Association, and by virtue of such membership, became subject to the terms and conditions of the Cement Masons Master Agreements ("the Agreements"). Id. ¶ III. The Agreements provides for prompt payment of all contributions to the Trust Funds and for the payment of interest and liquidated damages for delinquent contributions. Id. ¶¶ V-VI. After Defendant failed to make contributions to the Trust Funds pursuant to the Agreements, Plaintiffs brought the instant action, alleging breach of contract. Defendant was properly served on July 25, 2011, ECF No. 7 ("Proof of Service"), but has yet to enter an appearance or otherwise respond to Plaintiffs' Complaint. The clerk entered default on September 7, 2011. Now Plaintiffs seek default judgment for $5,039.16 in unpaid contributions, $3,624.86 in interest and liquidated damages, and $7,558.75 in attorney's fees, and $594.16 in costs. ECF No. 16 ("Proposed Order").
///
///
///

United States District Court
For the Northern District of California

### III. LEGAL STANDARD

After entry of default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b)(2). Its decision whether to do so, while "discretionary," Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors. As a preliminary matter, the Court must "assess the adequacy of the service of process on the party against whom default judgment is requested." Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). If the Court determines that service was sufficient, it should consider whether the following factors support the entry of default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of a plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir. 1992).

**IV. DISCUSSION**

    **A.  Proof of Service**

Under Rule 4(h) of the Federal Rules of Civil Procedure, a plaintiff may serve a corporate defendant "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B). Alternatively, a plaintiff may follow the state law for service of process. Fed. R. Civ. P. 4(h)(1)(A).  Here, Defendant's agent for service of process was personally served with the summons, Complaint, and other relevant documents on July 25, 2011. Accordingly, the Court finds that service of process was adequate.

    **B.  Eitel Factors**

Applying the factors articulated by the Ninth Circuit in Eitel, the Court finds the factors weigh in favor of granting Plaintiffs' Application.

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered.  See Pepsico, Inc. v. California Sec. Cans, 238 F.Supp. 2d 1172, 1177 (C.D. Cal. 2002). In general, where default has been entered against a defendant, a plaintiff has no other alternative by which to recover damages. Id.  Therefore, the Court finds Plaintiffs would be prejudiced if default judgment is not granted.

The second and third Eitel factors require that a plaintiff's allegations state a claim upon which it can recover.  In the instant action, Plaintiffs claim that Defendant breached the Agreements by failing to make timely contributions.  Plaintiffs'

allegations are sufficient to state a claim. Accordingly, these factors weigh in favor of default judgment.

As to the fourth Eitel factor, the Court must consider "the amount of money at stake in relation to the seriousness of defendant's conduct." Bd. of Trs. of the N. Cal. Sheet Metal Workers, 2000 U.S. Dist. LEXIS 19065, at *4-5. Here Plaintiffs seek a total of $16,816.93 for unpaid contributions, liquidated damages, interest, and attorneys' fees. This is less than the amount at stake in other cases where default judgment was deemed appropriate. See Tragni v. Manzanares, No. CV 11-01173 EJD, 2011 U.S. Dist. LEXIS 94281, at *5 (N.D. Cal. Aug. 23, 2011) ($94,858.81 deemed "modest"). Further, Plaintiffs' damages are consistent with the amount owing under the Agreements. Accordingly, this factor weighs in favor of the entry of default judgment.

With respect to the fifth Eitel factor, the material facts of the instant case are not reasonably likely to be subject to dispute. Plaintiffs have pled factual allegations and provided declarations supporting their claims. Additionally, as the Court may assume the truth of the facts pled in the Complaint (except with respect to damages) after the clerk's entry of default, there is no likelihood that any genuine issue of material fact exists. See Geddes, 559 F.2d at 560. Defendant's failure to file an answer to Plaintiffs' Complaint or submit a response to Plaintiffs' Motion for Default Judgment further supports this conclusion. Accordingly, this factor weighs in favor of entry of default judgment.

5

As to the sixth factor, there is no support for finding that Defendant's default is due to excusable neglect. Defendant was served with the Complaint and summons in this action over six months ago and has yet to enter an appearance. Plaintiffs also served their Motion for Default Judgment on Defendant. ECF No. 17. In such circumstances, default cannot be attributed to excusable neglect. See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). This factor supports entry of default judgment.

The final Eitel factor, underscoring the policy favoring decisions on the merits, does not save this action from default judgment. This policy is not dispositive and "Defendant's failure to answer Plaintiff['s] Complaint makes a decision on the merits impractical, if not impossible." Pepsico, 238 F. Supp. 2d at 11.

### C. Damages

Plaintiffs seek the award of unpaid contributions under the Agreement, liquidated damages, interest, costs, and attorney's fees. After reviewing Plaintiffs' Motion for Default Judgment and the evidence submitted, the Court finds that the amount sought by Plaintiffs is appropriate. Plaintiffs provided adequate evidence supporting the amount of unpaid contributions owing under the Agreements prior to the filing of the instant action, including a declaration from John Hagan ("Hagan"), the accounts receivable manager for the Laborers Funds Administrative Office of Northern California, Inc., which provides administrative services for the Cement Masons Trust Funds. ECF No. 15 ("Hagan Decl."). The Hagan declaration also provides support for Plaintiffs' demand for

interest and liquidated damages.  Further, the fees and costs requested by Plaintiffs, which are provided for by ERISA, are reasonable and supported by declarations.  See 29 U.S.C. § 1132(g)(2)(D); ECF No. 14 ("Lozano-Batista Decl.").

## V. CONCLUSION

Accordingly, the Court enters judgment in favor of Plaintiffs Board of Trustees in their capacities as Trustees of the Cement Masons Health and Welfare Trust Fund for Northern CA, Cement Masons Pension Trust Fund for Northern CA, Cement Masons Vacation/Holiday Trust Fund for Northern CA, Cement Masons Apprenticeship & Training Trust and against Defendant Core Concrete Construction, Inc. as follows:

1. Defendant is ordered to pay the sum of $5,039.16 in principal contributions owed to the Trust Funds for amounts self-reported by Defendant for May 2010;

2. Defendant is ordered to pay $1,722.70 in liquated damages and interest owed to the Trust Funds for self-reported amounts due for May 2010 that were never paid;

3. Defendant is ordered to pay the sum of $1,902.16 in liquated damages and interest owed to the Trust Funds as a result of Defendant's delinquent payments on reported hours;

4. Defendant is ordered to submit to an audit of its books and records by Plaintiffs from the date of January 1, 2010 forward and to pay any delinquent amounts disclosed by such audit;

5. Defendant is ordered to pay attorneys' fees in the amount of $7,558.75; and

6. Defendant is ordered to pay costs in the amount of $594.16.

IT IS SO ORDERED.

Dated: February 16, 2012 
UNITED STATES DISTRICT JUDGE